# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff-Appellee,<br><br>     v.<br><br>CHRISTINA ANN CARR,<br><br>   Defendant-Appellant. | 1:06-CR-00175 OWW<br><br>**MEMORANDUM DECISION AND ORDER RE: CROSS REQUESTS FOR RECONSIDERATION OF ORDER RE: CHALLENGE TO EASTERN DISTRICT OF CALIFORNIA GENERAL ORDER 441.** |

## I.   INTRODUCTION

Before the court for decision are cross requests for reconsideration of an August 10, 2006 memorandum decision and order regarding three Defendants' challenges to the United States District Court for the Eastern District of California's General Order 441 (GO 441), which requires full shackling of all in-custody defendants at initial appearances before magistrate judges.  (Doc. 29.)[1]  The August 10, 2006 memorandum decision remanded GO 441 to the district court judges for re-promulgation because the rule was promulgated without appropriate public notice and opportunity to comment.  The rule was rescinded with respect to its operation in Bakersfield, Redding, and Yosemite magistrate judge courts, but was permitted to remain in force during remand for the Sacramento and Fresno courthouses due to the risk of harm to all present in courtrooms during defendants'

---

   [1] Unless otherwise noted, all Document ("Doc.") references are to documents in the *Carr* case.

1   first appearances.  (Doc. 28 at 44.)

2       Defendant Carr[2] now moves for reconsideration of that order

3   on three grounds.  First, Carr objects to the inclusion in the

4   record of a letter sent by the Acting Federal Defender Daniel J.

5   Broderick to the United States Attorney's Office.  Carr requests

6   that the letter be stricken from the record.  Second, Defendant

7   objects to that part of the memorandum decision and order that

8   permits GO 441 to remain in force in Sacramento and Fresno during

9   re-promulgation.  Finally, Carr points out that the memorandum

10  decision and order does not specifically address whether or not

11  GO 441 should remain in effect at the South Lake Tahoe

12  Courthouse.

13      The United States opposes the motion for reconsideration,

14  arguing that the inclusion of the Broderick letter was proper

15  under applicable procedures and that the district court's

16  decision to allow GO 441 to remain in force in Sacramento and

17  Fresno was proper.  In addition, the United States cross-moves

18  for reconsideration in the *Carr* case on the merits, arguing that

19  the promulgation of GO 441 did not require notice and comment.

20      Oral argument on the cross motions for reconsideration was

21  heard on September 12, 2006.

22

23

24

25      [2]    The instant motion for reconsideration was filed
    jointly by Defendant Carr and John D. Brandau, a defendant in a
26  separate case, *United States v. Brandau*, 1:06-cr-00131 OWW.
    Brandau's motion for reconsideration was dismissed, however,
27  because he filed a notice of appeal prior to filing the motion
    for reconsideration, removing jurisdiction from the district
28  court.  (*See Brandau* Doc. 38.)

**2**

## II.   **RECENT LEGAL DEVELOPMENTS**

Two relevant legal developments have occurred since the September 12, 2006 hearing on the instant cross-motions for reconsideration.  First, also on September 12, 2006, the United States District Court for the Eastern District of California adopted as a Local Criminal Rule a full-shackling requirement at initial appearances in the Sacramento and Fresno courthouses. *See* General Order 449, promulgating Local Rule CRIM 43-401. General Order 449 provides in pertinent part:

> Good cause appearing.
>
> IT IS HEREBY ORDERED that the judges of the Eastern District find that there is an immediate need to adopt a Local Rule regarding shackling procedures for courts convened in the Sacramento and Fresno Courthouses. Pursuant to 28 U.S.C. §2071(e), this court adopts Local Rule CRIM 43-401, to be effective immediately (L.R. CRIM 43-401 and Findings Attached).
>
> IT IS FURTHER ORDERED, pursuant to 28 U.S.C. §2071(e) and Federal Rule of Criminal Procedure 57, the Clerk of the Court is directed to provide public notice and the opportunity to comment on Local Rule CRIM 43-401 to the bar and public of the Eastern District. Thereafter, the bar and public will have forty-five (45) days to provide comment.

The newly promulgated Local Rule 43-401 provides in pertinent part:

> SHACKLING OF PRISONERS DURING COURT PROCEEDINGS
>
> (a) Applicability. This rule is applicable to the shackling of prisoners during court proceedings convened <u>in the Sacramento and Fresno Courthouses</u>.
>
> (b) Definition. The term "fully shackled" means leg shackles, waist chains, and handcuffs.
>
> The term "long cause proceeding" means a proceeding that is expected to last at least 30 minutes, such as an evidentiary hearing, and where the defendant will be seated at the defense table except when testifying.

(c) Shackling. Unless the judge presiding at the proceeding determines otherwise;

(1) <u>At initial appearances, all defendants will be fully shackled</u>.

(2) At all subsequent hearings, with the exception of a Rule 11 guilty plea or a long cause proceeding, detained defendants will be fully shackled.

(3) At Rule 11 proceedings, in which only a single defendant is appearing, a detained defendant shall be fully shackled except that the defendant shall be permitted the unshackled use of one hand, unless the Marshal recommends full shackling for particularized reasons, and the presiding judge agrees.

(4) In long cause proceedings, in which only a single defendant is appearing, a detained defendant shall be fully shackled except that the defendant shall be permitted the unshackled use of the defendant's writing hand – unless the Marshal recommends full shackling for particularized reasons, and the presiding judge agrees – and shall remain seated at the defense table except when giving testimony.

(d) Jury Proceedings. This rule does not apply to trial proceedings at which a jury is being chosen or has been impaneled.

(Local Rule 43-401 (emphasis added).)

As justification for the adoption of the rule, the Eastern District of California made certain findings, which are attached to General Order 449. The relevant findings are as follows:

1. The United States Marshal for the Eastern District of California, who is responsible for the security of the courtroom, recommends full shackling of all detained defendants at all proceedings in order to assure the safety of all persons in the courtroom, including the judge, lawyers, interpreters, court personnel, defendants, and the public. The Marshal's reasons are provided in the attached memorandum. The court has considered the factual recitations of the U.S. Marshal and accepts the recommendation with the exception of Rule 11 proceedings and long cause proceedings....

2. The Eastern District of California has a heavy criminal caseload. Criminal calendars frequently are lengthy and require the movement of many detained prisoners in and out of the courtroom.

3. Most criminal proceedings are brief such that the time in which a defendant is before the court fully shackled is minimal.

4. The alternatives to full shackling are not practical or would merely substitute the presence of much greater numbers of deputy marshals for physical restraints, with no significant increase in decorum or dignity for the defendant. The resources of the Marshal service in this district are finite. Unshackling all defendants for all proceedings would cause very considerable delays and would disrupt the operation not just of the calendar court but potentially of all other courtrooms due to the necessity to draw deputy marshal's from other courtrooms to provide the additional deputies necessary to assure security when defendants are unshackled.

(General Order 449 at 5.)   Attached to the findings was a copy of the December 8, 2005 letter from Antonio C. Amador, the United States Marshal, to the Eastern District of California -- the same letter that had been attached to General Order 441.

Then, on September 15, 2006, the Ninth Circuit issued a new opinion in *United States v. Howard*, ___ F.3d ___, 2006 WL 2640526 (hereinafter, "*Howard II*"), after granting the government's petition for rehearing, upholding the shackling policy adopted by the Central District of California.   *Howard II* held in pertinent part:

This court has not decided whether a general policy of shackling a defendant for a proceeding in front of a judge violates due process. Nearly all of the litigation concerning shackled defendants arises in the context of proceedings in front of a jury. See, e.g., Deck v. Missouri, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) (extending the general prohibition on the use of shackles to the penalty phase of a jury trial); Duckett v. Godinez, 67 F.3d 734 (9th Cir.1995); Jones v. Meyer, 899 F.2d 883 (9th Cir.1990); Spain v. Rushen, 883 F.2d 712 (9th Cir.1989). These cases turn in large part on fear that the jury will be prejudiced by seeing the defendant in shackles. See Deck, 544 U.S. at 630; Duckett, 67 F.3d at 748; see also Illinois v. Allen, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Fear of prejudice is not at issue in the

**5**

present case, as a judge in a pretrial hearing
presumably will not be prejudiced by seeing defendants
in shackles. In cases involving sentencing before a
judge, other courts have disagreed about whether
shackling violated due process. Compare United States
v. Zuber, 118 F.3d 101, 104 (2d Cir.1997) (finding no
due process violation), with People v. Fierro, 1
Cal.4th 173, 3 Cal.Rptr.2d 426, 821 P.2d 1302, 1322
(Cal.1992) (finding due process violation).

Shackling a defendant in any judicial proceeding can
have negative effects. The Supreme Court has stated
that "the use of [shackling and restraints] is itself
something of an affront to the very dignity and decorum
of judicial proceedings that the judge is seeking to
uphold." Allen, 397 U.S. at 344; see Deck, 544 U.S. at
631. Moreover, the Supreme Court expressed concern that
restraints could greatly reduce the defendant's ability
to communicate with his counsel. Id. This court has
noted that shackling may confuse and embarrass the
defendant, thereby impairing his mental faculties. See
Duckett, 67 F.3d at 747-48, citing Spain, 883 F.2d at
720-21. Shackling may also cause the defendant physical
and emotional pain. See Rhoden v. Rowland, 172 F.3d
633, 637 (9th Cir.1999); Spain, 883 F.2d at 720-21.

Defendants contend that the Marshals Service's
shackling policy violates their due process rights.
They point out that before a defendant can be shackled
in front of a jury, the court must be persuaded by
compelling circumstances that some measure is needed to
maintain security, and that no less restrictive
alternatives are available. See Jones, 899 F.2d at
884-85. They argue that due process requires that there
be no restraint whatsoever without an individualized
determination. This may go farther than due process
requires. But we do not have to reach this question.
This case does not involve the question of shackling in
the presence of a jury or during a trial.

In this case, due process at a minimum does require
that before there is any district-wide policy affecting
all incarcerated defendants whom the government must
transport to a first appearance, there must be some
justification. The Supreme Court has stated that "if a
restriction or condition is not reasonably related to a
legitimate goal-if it is arbitrary or purposeless-a
court permissibly may infer that the purpose of the
governmental action is punishment that may not
constitutionally be inflicted upon detainees qua
detainees." Bell v. Wolfish, 441 U.S. 520, 539, 99
S.Ct. 1861, 60 L.Ed.2d 447 (1979).

**6**

Cases addressing the due process rights of pretrial detainees typically involve challenges to prison policies. See, e.g., id. Courts ordinarily defer to the expert judgments and professional expertise of corrections officials. Id. at 547-48. Corrections officials must produce at least some evidence that their policies are based on legitimate penological justifications. Swift v. Lewis, 901 F.2d 730, 733 (9th Cir.1990).

The record in this case reflects that this policy furthers the legitimate governmental interest of the Marshals Service in carrying out its statutory mandate. 28 U.S.C. § 566(a) states that "[i]t is the primary role and mission of the United States Marshals Service to provide for the security ··· of the United States [Courts]." The security concerns addressed by this policy emerge due to the Central District's practice of conducting proceedings in a large courtroom on the third floor of the Roybal Courthouse, in the presence of multiple defendants, where the risks of conflict, violence, or escape are heightened.

The policy of requiring leg shackles for the initial court appearance before a magistrate judge is reasonably related to a legitimate security purpose. It imposes no greater restriction than necessary on the in-custody defendants. The record indicates that this policy is less restrictive than the previous policy requiring full restraints. The policy leaves in place the option for a defendant to move the court for removal of the shackles, and an individualized determination may be made at the time of the motion as to whether extenuating circumstances warrant removal of the shackles. The policy is also reasonably related to a legitimate security purpose because understaffed security officers must provide courtroom security in a large and unsecure space. The policy comes within the Supreme Court's admonition that courts should rely heavily on professional expertise in determining the proper means for carrying out security responsibilities. In Bell, the Supreme Court stated that

In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." 441 U.S. at 540 n.

**7**

23. We have found no evidence in the record that the Marshals Service exaggerates the security concerns in the Roybal Courthouse that are the basis of the policy.

*Howard II*, ___ F.3d ___, 2006 WL 2640526.

### III.   STANDARD OF REVIEW FOR A MOTION FOR RECONSIDERATION.

Motions for reconsideration are governed by Local Rule 78-230(k), which provides in pertinent part:

Whenever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, it shall be the duty of counsel to present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for which reconsideration is sought, including:

***

(3)   what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion, and

(4)   why the facts or circumstances were not shown at the time of the prior motion.

### IV.   DISCUSSION

### A.   Threshold Matter: Defendant Carr's Proposed Order.

Subsequent to the issuance of GO 449 and the Ninth Circuit's decision in *Howard II*, Carr submitted a proposed order regarding her motion for reconsideration suggesting that the district court make a finding that GO 449 and Local Rule 43-401 violate Ninth Circuit case law.  In her proposed order, Carr attempts to challenge GO 441 and 449 under the new *Howard II* ruling, arguing:

Howard II does not save the shackling policy in either Eastern District of California General Order 441 or Local Rule CRIM 43-401 because that policy differs from the Central District policy in two key respects. First,

**8**

the court in Howard II found that a policy of "requiring leg shackles for the initial court appearance before a magistrate judge" (slip opinion at 11435) was reasonable because it "imposes no greater restriction than necessary on the in-custody defendants." (slip opinion at 11435) The court noted that the Central District had previously required full restraints. The shackling policy in this court provides for full restraints [wrist, waist, and legs] and therefore imposes an unnecessary restriction on defendants at their appearances before a magistrate judge.

Secondly, the court in Howard II noted that the Central District policy "leaves in place the option for a defendant to move the court for removal of the shackles, and an individualized determination may be made at the time of the motion as to whether extenuating circumstances warrant removal of the shackles." (slip opinion at 11435) The Eastern District policy states that "[a]t initial appearances, all defendants will be fully shackled" with no individualized determination where extenuating circumstance might warrant a different policy. These two parts of the Central District policy, reduced levels of shackling and allowing exceptions, were the reasons the Ninth Circuit found the policy reasonable. Since the Eastern District policy does not contain these provisions its policy is not reasonably related to a legitimate security purpose and is invalid under the decision in Howard II.

(Doc. 37 at 2.)

The government vehemently objects to the district court considering this argument, insisting that it is an attempt to "have this Court provide an advisory opinion" as to the impact of *Howard II* and GO 449.  (Doc. 38 at 2.)  To the extent that Carr's proposed order can be interpreted as an argument in support of her motion for reconsideration based on new law, the district court may consider these arguments.  Normally, the government would be afforded an opportunity to respond, but, because Carr's motion for reconsideration can be denied entirely on other grounds, there is no need to extend the litigation further. *Howard II* is also referenced herein to the extent that it now

**9**

1  provides the operative rule of law or has rendered an issue moot.

2

3    **B.    Operation of GO 441 in South Lake Tahoe Courthouse**.

4        Carr correctly points out in a footnote that the August 10,

5  2006 decision did not address whether GO 441 would remain in

6  force in the South Lake Tahoe courthouse during remand.  (Doc. 29

7  at 5 n.1.)  This omission was inadvertent.  The August 10, 2006

8  decision allows GO 441 to remain in effect only in Sacramento and

9  Fresno because there was sufficient record evidence specifically

10 pertaining to those courthouses to justify continued operation of

11 the General Order.  However, the rule was rescinded with respect

12 to its operation in Bakersfield, Redding, and Yosemite, in part

13 because there is no record evidence specifically regarding those

14 courthouses.  Similarly, there is no record evidence regarding

15 security practices or needs in the South Lake Tahoe courthouse.

16 Accordingly, the rule is rescinded with respect to the South Lake

17 Tahoe courthouse as well.  The recently promulgated GO 449 and

18 Local Rule 43-401 do not alter this ruling, as they only apply to

19 Sacramento and Fresno courthouses.

20

21    **C.    Inclusion of the Broderick Letter in the Record**.

22       The government attached to its appellee's brief in the

23 Brandau case a February 14, 2006 letter from Daniel J. Broderick,

24 the Acting Federal Defendant, to John Vincent, Chief of the

25 Criminal Division within the United States Attorney's office (the

26

27

28

**10**

"Broderick letter").  (Doc. 23-1, filed July 14, 2005.)[3]
Although the district court did not rely on the substance of the
letter in its analysis, the letter was referenced in the August
10, 2006 memorandum decision as part of a factual background
section.  (*See* Doc. 30 at 14-15.)  The  motion for
reconsideration requests that the court now strike the letter
from the record.

As a threshold matter, the government suggests that
"Defendant Carr may not even be allowed to appeal [the shackling]
decision by the magistrate judge since there is no jurisdictional
basis by which this issue can be raised prior to the entry of
final judgment in the case....The interlocutory [nature] of
Carr's case...is a further basis as to why this court lacks
jurisdiction to hear her contention about shackling, absent a
final order."  (Doc. 32 at 4 n.2.)

Carr rejoins that she "correctly appealed the denial of her
request to be unshackled before the Magistrate Judge to [the
district court," arguing that her appeal is governed by Rule 59
of the Federal Rules of Criminal Procedure, which sets forth
procedures to be followed when objecting to rulings of a

---

[3]     In his reply brief on the merits of his appeal,
Defendant Brandau objected to the inclusion of the letter in the
record and requested that it be stricken.  (*Brandau* Doc. 26 at
4.)  The issue was not raised at oral argument and the district
court inadvertently failed to rule on the motion to strike in its
August 10, 2006 decision.  Carr did not join in Brandau's reply
brief, as her appeal was not yet ripe.  Thus, Carr did not join
in the motion to strike the Broderick letter.  Carr raises the
issue for the first time here.

magistrate judge on nondispositve matters.[4]   Rule 59(a) provides:

> (a) Nondispositive Matters. A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense. The magistrate judge must promptly conduct the required proceedings and, when appropriate, enter on the record an oral or written order stating the determination. <u>A party may serve and file objections to the order within 10 days after being served with a copy of a written order or after the oral order is stated on the record, or at some other time the court sets. The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous</u>. Failure to object in accordance with this rule waives a party's right to review.

(emphasis added).

Rule 59 implements within the criminal system the requirements of 28 U.S.C. § 636(b)(1)(a), which provides:

> Notwithstanding any provision of law to the contrary--
>
> (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. <u>A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law</u>.

(emphasis added).  (Section 636(b)(1) is implemented within the civil system by Federal Rules of Civil Procedure 72.)

---

[4]    Defendant Carr initially suggested that Federal Rule of Criminal Procedure 58(g)(2) provides the applicable standard for determining the scope of the record.   However, the government correctly points out that only Brandau's appeal was taken pursuant to Rule 58(g)(2), which applies to appeals from petty offense and misdemeanor cases <u>tried</u> by a magistrate judge. *See* Fed. R. Crim. P. 58(a).  Carr's case does not fall into this category, as she is charged with a Felony and is set to be tried before the district court.

1        Local Rule 72-302 assigns "[all] pretrial matters in felony

2   criminal cases" with certain exceptions, to the magistrate

3   judges.  Local Rule 12-430 [Criminal motions and procedures] (b)

4   provides that "[e]ntries of pleas of guilty and motions to quash

5   or dismiss an information or indictment, to suppress evidence,

6   and to discover the identity of informants shall be heard by the

7   assigned Judge.  All other pretrial matters in criminal actions

8   shall be heard by the Magistrate Judge."  (citations omitted)

9   Rule, 12-430(j), further provides that "[a]n appeal from a final

10  decision of the Magistrate Judge shall be served and filed within

11  ten (10) court days after service of the Magistrate Judge's

12  decision...."  Carr's appeal is properly brought as an objection

13  to the magistrate's ruling on a pretrial matter.

14       The question remains, however, whether it is appropriate to

15  "supplement" the record at the district court level.  In support

16  of its position that the record can be supplemented, the

17  government cites Federal Rule of Appellate Procedure 10(e)(2),

18  which provides in pertinent part:

19                 (a) Composition of the Record on Appeal. The following
                   items constitute the record on appeal:
20

21                 (1)  the original papers and exhibits filed in the
                        district court;
22                 (2)  the transcript of proceedings, if any; and

23                 (3)  a certified copy of the docket entries
                        prepared by the district clerk.
24                                     ***

25                 (e) Correction or Modification of the Record.
                                       ***
26

27                 (2)  If anything material to either party is
                        omitted from or misstated in the record by
                        error or accident, the omission or
28                      misstatement may be corrected and a

**13**

supplemental record may be certified and
forwarded:
(A) on stipulation of the parties;
(B) by the district court before or after the
record has been forwarded; or
(C) by the court of appeals.

(3)    All other questions as to the form and
content of the .record must be presented to
the court of appeals.

But, Carr correctly points out that Rule 10(e)(2) is meant to

provide an opportunity to correct the appellate record by

supplementation of documents that <u>were admitted by the lower

court</u> but accidentally omitted from the appellate record by

accident or mistake. *See In Re Robbins Maritime*, 162 F.R.D. 502,

504 (E.D. Va. 1995).  Here, the Broderick letter was not offered

into evidence before the magistrate judge and therefore cannot be

brought into the record pursuant to Rule 10(e)(2).

As discussed, to establish jurisdiction over her appeal,

Carr relies on Rule 59, which provides in its entirety:

Notwithstanding any provision of law to the contrary-

(A) a judge may designate a magistrate judge to hear
and determine any pretrial matter pending before the
court, except a motion for injunctive relief, for
judgment on the pleadings, for summary judgment, to
dismiss or quash an indictment or information made by
the defendant, to suppress evidence in a criminal case,
to dismiss or to permit maintenance of a class action,
to dismiss for failure to state a claim upon which
relief can be granted, and to involuntarily dismiss an
action. <u>A judge of the court may reconsider any
pretrial matter under this subparagraph (A) where it
has been shown that the magistrate judge's order is
clearly erroneous or contrary to law</u>.

(B) a judge may also designate a magistrate judge to
conduct hearings, including evidentiary hearings, and
to submit to a judge of the court proposed findings of
fact and recommendations for the disposition, by a
judge of the court, of any motion excepted in
subparagraph (A), of applications for posttrial [FN1]
relief made by individuals convicted of criminal
offenses and of prisoner petitions challenging
conditions of confinement.

**14**

(C) the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. <u>The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions</u>.

(emphasis added.)  Although the final sentence does appear to permit the admission of additional evidence, that language applies only subpart C, which pertains to matters submitted to a magistrate judge for the preparation of findings and recommendations under subpart B.  Findings and recommendations are subject to de novo review during which the district court may take additional evidence.  In contrast, pretrial matters covered by subpart A, such as the one at issue in this case, are subject to a "clearly erroneous or contrary to law" standard.  Neither party cites authority that sheds light on whether a district court may receive additional evidence in the context of such a review.  However, the Third Circuit, in *Haines v. Liggett*, 975 F.2d 81 (1992), held that a district court <u>cannot</u> consider new evidence when reviewing a magistrate judge's decision under section 636(b)(1)(A)'s "clearly erroneous" standard.  *Id*. at 93-94 (applying the clearly erroneous standard as it is implemented in Federal Rule of Civil Procedure 71(a), which contains language identical to that of Federal Rule of Criminal Procedure 59(a)).  Under *Haynes*, it is not proper for the district court to consider

the Broderick letter because it was not before the magistrate judge.

The United States rejoins that it did not have an opportunity to offer the Broderick letter before the magistrate judge because neither Carr nor Brandau raised the issue of lack of notice and comment before the magistrate judge.  Moreover, the United States notes that the Broderick letter was offered to refute Brandau and Carr's assertion that "Go 441 was promulgated without prior notice to the Office of Federal Defender or other defense organization."  (Doc. 15 at 8.)  The government maintains that it is a "basic tenet of appellate law that an issue not raised before the lower court cannot be raised on appeal."  (Doc. 32 at 7.)  *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976).  The government insists that to strike the letter would give Defendant a "windfall."   In other words, the United States argues that it would not be fair for Carr's evidence regarding the lack of notice to be in the record if the government's contrary evidence is excluded.  Defendant Carr does not directly address this argument, except to argue that she is unaware of any authority that supports the existence of a "no windfall" rule.

Although the government has not formally questioned whether the district court even had jurisdiction to rule on the notice and comment issue, they do appear to be attempting to bootstrap the Broderick letter into the record under their "windfall" argument.  But, there is no need to delve any deeper into the admissibility of the Broderick letter here, because the letter appears never to have been offered into evidence in connection with the *Carr* case.  Moreover, as discussed below, the notice and

**16**

comment issue has been mooted by the issuance of GO 449, which provides a notice and comment period with respect to the imposition of full shackling on defendants making their initial appearances in Fresno and Sacramento.

### D.   Continued Application of GO 441 in Sacramento and Fresno.

Carr's second objection is to Part III, Subpart C of the memorandum decision, which held that GO 441 could remain in operation in the Sacramento and Fresno courthouses pending re-promulgation.  Carr raises several objections to this ruling.

### 1.   Jurisdiction to Consider Issue of Vacatur.

First, Carr suggests that the district court, sitting as an appellate court in this case, did not have jurisdiction to properly consider the issue of vacatur, arguing:

> This Court's jurisdiction, when sitting as an appellate court, is constrained by 28 U.S.C. § 2106 (1948)(defining ths scope of an appellate court's power of determination). *See generally Bryan v. United States*, 338 U.S. 552 (1950)(holding that a court of appeals, when remanding a case to a district court, must look to § 2106 for guidance as to the kind of order that it may direct the district court to enter; *cf. McKissick v. United States*, 379 F.3d 754 (5th Cir. 1967)(holding that, rather than considering a matter sua sponte, an appellate court should note the existence of an unargued question and remand the case to the lower court).

(Doc. 29 at 3.)  The government does not respond to this argument.

An appellate court has the authority to "affirm, modify, vacate, set aside or reverse any judgment."  28 U.S.C. § 2106.

//

//

17

> The Supreme Court or any other court of appellate jurisdiction may affirm, <u>modify</u>, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

(emphasis added).  The issue of whether to allow the rule to remain in place during remand was properly considered as a modification to the original judgment in this case, a power expressly granted by § 2106.

### 2.   Merits of the Vacatur Decision.

Defendant also challenges the merits of the district courts' decision to allow GO 441 to remain in force in Sacramento and Fresno.  First, Defendants cite *Baylson v. Disciplinary Board of the Supreme Court of Pennsylvania*, 975 F.2d 102, 107 (3d Cir. 1992), for the proposition that "'[l]ocal rules that fail to comply with those [statutory] requirements are nullities.'" (Doc. 32 at 4.)  But, Defendants quote *Baylson* out of context.  In *Baylson*, the federal district courts for the Eastern, Middle, and Western districts of Pennsylvania adopted the Pennsylvania Rules of Professional Conduct.  One of the Rules, Rule 3.10, required that prosecutors obtain prior judicial approval before subpoenaing an attorney to appear before a grand jury.  *Id*. at 104.  Shortly after adopting wholesale the Pennsylvania Rules of Professional conduct, all three federal district courts situated in Pennsylvania adopted local rules that stated Rule 3.10 had no application in their jurisdictions.  *Baylson v. Disciplinary Bd. of Supreme Court of Pennsylvania*, 764 F. Supp. 328, 331 (E.D. Pa. 1991).  Several federal prosecutors sued to prevent the

Disciplinary Board of the Supreme Court of Pennsylvania from enforcing Rule 3.10 against them.  The prosecutors argued that the local rules barring application of Rule 3.10 were supreme because they were federal laws and that Rule 3.10 conflicted with the Federal Rules of Criminal Procedure.  The Disciplinary Board argued that the local rules were invalid for lack of appropriate notice and comment and that Rule 3.10 did not conflict with any federal law or rule.

     The district court ruled in favor of the Board on the notice and comment issue, declaring the local rules invalid.  However, the district court held that Rule 3.10 was itself invalid as applied in federal practice because it conflicted with federal law.  The Board appealed the latter determination to the Third Circuit.  <u>The notice and comment issue was not raised on appeal.</u>

     On appeal the Third Circuit affirmed the district court's holding regarding the <u>substantive</u> invalidity of Rule 3.10, although on slightly more narrow grounds.  The Third Circuit first looked to 28 U.S.C. § 2071(a), which permits district courts to "prescribe local rules of practice so long as these rules are consistent with the rules of practice and procedure promulgated by the Supreme Court under section 2072."  975 F.2d at 107.  The Third Circuit then examined other relevant authorities to determine whether the <u>substance</u> of Rule 3.10 was a permissible subject for promulgation as a local rule:

          Federal Rule of Criminal Procedure 57, itself adopted
          by the Supreme Court pursuant to 28 U.S.C. § 2072(a),
          sets out the power of the district court to adopt local
          rules relating to criminal matters. Rule 57 provides in
          relevant part that each district court may from time to
          time make or amend the rules governing its practice
          except that these rules may not be inconsistent with

the Federal Rules of Criminal Procedure. The Advisory Committee's comments on Rule 57 go on to explain the narrow scope and purpose of Rule 57. According to the committee's comments, the purpose of Rule 57 is to leave "matters of detail" to individual courts to regulate either by local rules or by usage. As to the scope of those "matters of detail" the committee cites as examples: "the mode of impanelling a jury, the manner and order of interposing challenges to jurors, the manner of selecting the foreman of a trial jury, the matter of sealed verdicts, the order of counsel's arguments to the jury and other similar details."

<u>Accordingly, when the district court adopts a local rule which touches on criminal matters, that rule must comply with at least two requirements. First, pursuant to 28 U.S.C. § 2071(a) and F.R.Crim.P. 57, the local rules must not be inconsistent with the Federal Rules of Criminal Procedure. Second, as the advisory notes to Rule 57 made clear, the local rules must be narrow in scope and must deal with "matters of detail" not covered by the Federal Rules. **Local rules that fail to comply with those requirements are nullities**</u>. Frazier v. Heebe, 482 U.S. 641, 646 (1987).

*Id.* (emphasis added)(parallel citations omitted).  In the passage quoted by *Carr*, the Third Circuit actually held that local rules are nullities if they are either (1) inconsistent with the Federal Rules or (2) fail to deal with "matters of detail."  Both categories are substantive defects.  The Third Circuit in *Baylson* did not consider the impact of a <u>procedural</u> violation on the continued viability of a local rule.  Although the district court in *Baylson*, did find that the local rules deleting Rule 3.10 were invalid because they were promulgated without appropriate notice and comment, the district court simultaneously found rule 3.10 to be inapplicable, so it had no occasion to consider the continued viability of the local rules pending remand.

Two other cases cited by Defendant similarly concern <u>substantive</u>, rather than <u>procedural</u> challenges to local rules. *See Frazier v. Heebe*, 482 U.S. 641, 646 (1987)(invalidating local

1   rule barring out-of-state lawyers from joining the Bar of the
2   Eastern District of Louisiana as "unnecessary and irrational") ,
3   and *Stern v. United States District Court*, 214 F.3d 4, 21 (1st
4   Cir. 2000)(invalidating local rule as exceeding scope of
5   rulemaking authority, following *Baylson*, 975 F.2d at 104).
6   Neither *Baylson, Frazier, or Stern* preclude allowing GO 441 to
7   remain in place pending re-promulgation to cure a procedural
8   deficiency.

9       Defendant next objects to reliance on a line of
10  administrative law cases for guidance on this matter, suggesting
11  that these cases are distinguishable because they all concern the
12  "unusual circumstances" of the potential extinction of a species
13  coupled with the unique legislative commands contained within the
14  Endangered Species Act.  But, although the cases cited by the
15  district court in the August 10, 2006 decision all happened to
16  concern the Endangered Species Act, the doctrine is not so
17  limited in scope.  Similar reasoning has been applied outside the
18  field of environmental regulation.  *See e.g.*, *International*
19  *Union, United Mine Workers of America v. Federal Mine Safety and*
20  *Health Admin.,*  920 F.2d 960, 966-967 (D.C. Cir. 1990)(noting
21  that remand without vacating an agency rule is appropriate "where
22  the failure lay in lack of reasoned decisionmaking," and
23  considering the "seriousness of the order's deficiencies (and
24  thus the extent of doubt whether the agency chose correctly) and
25  the disruptive consequences of an interim change that may itself
26  be changed").

27      Defendant Carr's motion for reconsideration of the portion
28  of the August 10, 2006 decision that allowed GO 441 to remain in
    effect in Fresno and Sacramento is **DENIED**.

**21**

**E.   Government's Cross-Motion for Reconsideration.**

**1.   Request for Reconsideration of the District Court's Decision to Rescind GO 441 as to Bakersfield, Redding and Yosemite.**

The United States takes exception in a footnote "to the court's decision to rescind GO 441 as to the Yosemite, Redding and Bakersfield courthouses, "since a number of defendants, especially out of the Bakersfield courthouse, do make their initial appearance in Bakersfield and then are transferred to Fresno for purposes of a detention hearing and/or other hearings."  (Doc. 32 at 6 n.5.)  The government argues that "the similar rationales adopting the general order also apply to those courthouses."  (*Id.*)  To the extent that this may be construed as a request for reconsideration of the district court's decision to rescind GO 441 with respect to Bakersfield, Redding and Yosemite, the request is unsupported by legal authority or record evidence. There is no evidence in the record establishing a need for shackling at these courthouses as there is no evidence as to the number and character of defendants' first appearances in those venues, or the physical security considerations that exist there. This conclusion is confirmed by GO 449 and Local Rule 43-401, which does not attempt to impost shacking outside Fresno and Sacramento.

**2.   Request for Reconsideration of the District Court's Decision that GO 441 was Promulgated Without Appropriate Notice and Comment.**

Finally, the government requests reconsideration of the district court's decision that GO 441 was promulgated without

appropriate notice and comment.  The government essentially

argues that the notice and comment requirements should not apply

to GO 441, because it "is a purely internal and administrative

rule, which does not 'impact a litigant or the litigation."

(Doc. 32 at 8.)

    While acknowledging that the Ninth Circuit in *Howard*

recognizes a constitutional interest that is implicated by

shackling, the government argues that this interest does not

trigger the operation of the notice and comment provision.  In

support of this assertion, the government makes a "slippery slope

argument," insisting that under the district court's existing

ruling "anyone could argue that a court rule affects practice and

procedure" and that "[t]here would no longer be any need for

general or standing orders of the court."  (Doc. 32 at 9.)  The

government attempts to draw a distinction between those rules and

orders that impact upon a litigant's "ability to present issues

before the court," which would be covered by notice and comment

requirements, and those that are "internal matter[s] regarding

security."  (*Id*. at 10.)  The government comments that

"[s]ecurity measures do not 'bind' a litigant to make any

procedural move whatsoever." (*Id*. at 11-12.)  But, even *Howard*

*II* recognizes that shackling does indeed impact upon a litigant's

ability to present issues before a court.

> Shackling a defendant in any judicial proceeding can
> have negative effects. The Supreme Court has stated
> that "the use of [shackling and restraints] is itself
> something of an affront to the very dignity and decorum
> of judicial proceedings that the judge is seeking to
> uphold." [Citations] Moreover, the Supreme Court
> expressed concern that restraints could greatly reduce
> the defendant's ability to communicate with his
> counsel. This court has noted that shackling may

1
2
                    confuse and embarrass the defendant, thereby impairing
                    his mental faculties. [Citations] Shackling may also
                    cause the defendant physical and emotional pain.

3   *Howard II*, ___ F.3d ___, 2006 WL 2640526, *6 (9th Cir. 2006).

4   Absent any clear indication to the contrary in the procedural

5   authorities cited by the United States, this court is bound by

6   the letter and spirit of *Howard II* to conclude that notice and

7   comment was required in this case.

8

9                           **V.   CONCLUSION**

10       Both parties' motions for reconsideration are **DENIED**, except

11  that the August 10, 2006 order is modified to rescind the

12  operation of GO 441 as to the South Lake Tahoe courthouse.

13

14

15

16  IT IS SO ORDERED.

17  **Dated:    October 10, 2006          /s/ Oliver W. Wanger**
18  b2e55c                               UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

                                    **24**